THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GEORGE ALLEN WARD, Appellant.

Argued April 12, 1954; decided May 20, 1954.

*Robert P. Lewis* for appellant. I. Chemical tests for alcohol must be made according to the procedure set forth in section 71-a of the Vehicle and Traffic Law if the results of such test are to be used in a prosecution under subdivision 5 of section 70. (*Matter of Schutt* v. *Macduff*, 205 Misc. 43; *Bovey* v. *State of New York,* 197 Misc. 302.) II. Defendant's right to have his own physician is mandatory and he must be so advised. (*Matter of Hudson* v. *Mealy,* 176 Misc. 696; *People* v. *Serences,* 255 App. Div. 587; *Matter of Boulevard Theatre & Realty Co.,* 195 App. Div. 518; *People* v. *Smith,* 253 Ill. 283; *Rochin* v. *California,* 342 U. S. 165.)

*Theodore M. Coburn, District Attorney (Gerald Saperstein of counsel), for respondent.* I. The chemical test was made according to section 71-a of the Vehicle and Traffic Law. (*People v. Defore,* 242 N. Y. 13.) II. It is not mandatory for an arresting officer to advise defendant he is entitled to have a physician of his own choosing administer a chemical test in addition to the one administered at the direction of the peace officer. (*McCluskey* v. *Cromwell,* 11 N. Y. 593; *Matter of Rathscheck,* 300 N. Y. 346; *Meltzer* v. *Koenigsberg,* 302 N. Y. 523.) III. Defendant voluntarily submitted to a blood test. No threats, compulsion or bodily force was used. (*Rochin* v. *California,* 342 U. S. 165; *People* v. *Spears,* 201 Misc. 666; *People* v. *Defore,* 242 N. Y. 13.)

FULD, J. Observed driving his truck in a highly erratic fashion, forcing oncoming cars off the road, George Ward was stopped and questioned by two state troopers who had followed him for about a quarter of a mile. When Ward, at their direction, stepped down from his vehicle, the officers noticed that his hands were " shaking and fumbly," that he " weaved " as he stood talking to them, that his speech was " slurred," that he mumbled " in an incoherent manner ", and that his breath smelled of alcohol. Believing that he might have been drinking to excess, the officers asked him — and, according to Ward, in a " gentlemanly manner " — if he would submit to a blood test to determine whether he was drunk, and he said that he would. The test was administered, and analysis disclosed that the alcoholic content of his blood amounted to .183% — substantially more than the .15% stamped by statute as " prima facie evidence that the defendant was in an intoxicated condition " (Vehicle and Traffic Law, § 70, subd. 5, par. [c]).

Upon appeal, following his conviction of driving while intoxicated (Vehicle and Traffic Law, § 70, subd. 5), defendant Ward disputes, not the sufficiency of the proof to establish his guilt, but the admissibility of the evidence determining the quantity of alcohol in his blood.

Section 71-a of the Vehicle and Traffic Law (as added by L. 1953, ch. 854) provides, in part, that

" 1. Any person who operates a motor vehicle  *  *  * in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the

purpose of determining the alcoholic content of his blood provided that such test is administered at the direction of a police officer having reasonable grounds to suspect such person of driving in an intoxicated condition. If such person refuses to submit to such chemical test the test shall not be given but the commissioner shall revoke his license * * * to drive * * *.[1]

\* \* \*

" 4. The person tested shall be permitted to have a physician of his own choosing administer a chemical test in addition to the one administered at the direction of the police officer."

While recognizing that nothing on the face of the section requires that the suspected inebriate be apprised of the provisions permitting him to refuse to take the test and to insist upon an additional analysis by his own physician, defendant contends that such a requirement is the necessary implication of the statutory scheme. In short, it is defendant's submission that the statute required that he be advised (1) that it was his right to refuse to submit to a blood test — being told at the same time that, if he did refuse, his license would be revoked — and (2) that it was his privilege to have a physician of his own choosing conduct the test in addition to the one given under the direction of the police.

We need not now, however, consider whether such notice or advice must be given, or the effect, if any, of a failure to give it. It is sufficient to decide that section 71-a has no application where, as here, the defendant voluntarily submitted to the test and there is no claim or hint of coercion.

In 1941, the legislature amended subdivision 5 of section 70 of the Vehicle and Traffic Law permitting courts to " admit evidence of the amount of alcohol in the defendant's blood * * * as shown by * * * chemical analysis ". A number of

1. Subdivision 1 of the statute was amended in March of this year to provide that the consequence of license revocation follows upon the suspect's refusal to submit to the test, but only if he has first "been placed under arrest and [has] thereafter been requested [by the arresting police officer] to submit to such * * * test ". The amendment also added that the test be administered "in accordance with the rules and regulations established by the police force of which" the police officer "is a member" (L. 1954, ch. 320).

communities in this state subsequently provided for the use of these tests on persons suspected of driving while intoxicated. (See Interim Report of New York State Joint Legislative Committee on Motor Vehicle Problems, Chemical Tests for Intoxication, N. Y. Legis. Doc. 1953, No. 25, pp. 15–16; Report of Committee on Tests for Intoxication, National Safety Council [1952] Uses of Chemical Tests for Intoxication in 1951, *passim;* cf. *People* v. *Spears,* 201 Misc. 666; *People* v. *Barnes,* 197 Misc. 477.) While there was no question of admissibility where the tests were given with a defendant's consent, there was doubt about compelling submission. (See 1941 Atty.-Gen. 143, 146; see, also, e.g., Ladd and Gibson, The Medico-Legal Aspects of the Blood Test to Determine Intoxication, 24 Iowa L. Rev. 191, 245–251.)

Disturbed by the growing menace of the intoxicated driver in this state and the relatively slight use that was being made of chemical tests, despite their acknowledged efficacy in reducing drunken driving, the Joint Legislative Committee on Motor Vehicle Problems in 1953 recommended the adoption of section 71-a. (See Interim Report of Joint Legislative Committee, *op. cit., passim*; see, also, Message of Governor Dewey approving the law, McKinney's 1953 Session Laws of New York, p. 2127.) This new section was directed at the problem of compelling submission to the test; it was concerned, not with those who consented to take the test, but with those who were required to submit. (See Interim Report of Joint Legislative Committee, *op. cit.,* pp. 17, 19, 35; see, also, address delivered by Professor Weinstein, Director of Legislative Committee's Study, during Proceedings of Second International Conference on Alcohol and Road Traffic [1953] entitled, Legislation, Alcohol and Traffic in the United States, p. 11.) Fully cognizant of the fact that tests voluntarily taken had been repeatedly used in the courts of this state (see Interim Report of Joint Legislative Committee, *op. cit.,* pp. 15–16), the Committee's purpose, obviously, was neither to circumscribe nor limit the use of such tests in evidence.

In point of fact, it is difficult to perceive any necessity for the protections embodied in section 71-a where the driver freely volunteers to take the test and have his blood analyzed (cf. *Matter of Schutt* v. *Macduff,* 205 Misc. 43, 51–52), and, in any event, there was ample reason and precedent for a statutory

scheme distinguishing between the evidentiary effect of a voluntary and an involuntary submission. In the field of confessions, for instance, the distinction between the admissible and the inadmissible is in a large measure written in terms of the difference between the voluntary and the involuntary. And where evidence seized without a warrant is inadmissible, it is accepted that a "warrantless search-and-seizure with *consent* of the party defendant is not within the rule." (8 Wigmore on Evidence [3d ed., 1940], § 2184a, p. 41; see, also, *United States* v. *Williams,* 161 F. 2d 835, 837; *United States* v. *Bianco,* 96 F. 2d 97, 98.)

We recognize, of course, that the line between consent and coercion is hard to draw whenever a policeman makes a request, however considerate or "gentlemanly", upon one who, having drunk to excess, has become intoxicated. (See Ladd and Gibson, *op cit.,* pp. 191, 245–251. And compare the content of the term "voluntary" in search and seizure cases, e.g., *Judd* v. *United States,* 190 F. 2d 649, 650–651; *Dade* v. *State,* 188 Okla. 677, 679–680; with that in confession cases, e.g., *Stein* v. *New York,* 346 U. S. 156, 186.) For this reason, among others, it is undoubtedly the better practice for the police to notify the person of his rights under section 71-a whenever there may be a charge of coercion. In the case before us, however, there was no claim, and no one has suggested, that the submission was anything but voluntary.

The judgment should be affirmed.

Lewis, Ch. J., Conway, Desmond, Dye, Froessel and Van Voorhis, JJ., concur.

Judgment affirmed.