85 N.Y.2d 1007 (1995)
654 N.E.2d 1213
630 N.Y.S.2d 965
The People of the State of New York, Respondent,
v.
Niles Atkins, Appellant.
Court of Appeals of the State of New York.
Argued April 26, 1995.
Decided June 13, 1995.
Robert S. Dean, New York City, and Philip L. Weinstein for appellant.
Robert M. Morgenthau, District Attorney of New York County, New York City (Elizabeth C. Brennan and Donald J. Siewart of counsel), for respondent.
Judges BELLACOSA, SMITH, LEVINE and CIPARICK concur; Judge SIMONS dissents in an opinion in which Chief Judge KAYE and Judge TITONE concur.
*1008 MEMORANDUM.
The order of Appellate Term should be affirmed.
Defendant was arrested and charged with operating a motor vehicle while impaired by drugs (Vehicle and Traffic Law § 1192 [4]) after he was found behind the wheel of a vehicle which had collided with a parked vehicle. Blood withdrawn from defendant after his arrest tested positively for the presence of phencyclidine, or PCP.
Defendant moved to suppress the results of the blood test, arguing that the test was administered in violation of Vehicle and Traffic Law § 1194 (2) because the blood was withdrawn more than two hours after his arrest. The motion was decided on a brief stipulated account of the facts surrounding the administration of the test, as follows. Defendant was arrested at the scene of the accident and taken to a hospital for examination. Within two hours of his arrest, defendant consented to the administration of a blood test. The test, however, was not administered until two hours and 28 minutes after his arrest. Criminal Court denied the motion, and Appellate Term affirmed, finding the two-hour requirement of Vehicle and Traffic Law § 1194 (2) to be inapplicable because defendant had voluntarily consented to the blood test.
In People v Ward (307 N.Y. 73), this Court held that former section 71-a of the Vehicle and Traffic Law  the predecessor "deemed consent" statute to Vehicle and Traffic Law § 1194[1]  had no application where the defendant expressly and voluntarily consented to a blood test (id., at 76). Noting that the deemed consent statute "was concerned, not with those who consented to take the test, but with those who were required to submit", we found it "difficult to perceive any necessity for the protections embodied in [the deemed consent statute] where the driver freely volunteers to take the test and have his blood analyzed" (id., at 77). It follows from our decision in *1009 Ward that the two-hour limitation contained in Vehicle and Traffic Law § 1194 (2) (a) has no application here where, as found by Appellate Term, defendant expressly and voluntarily consented to administration of the blood test.[2]
Defendant's contention that the two-hour limitation in section 1194 (2) (a) was intended by the Legislature to be an absolute rule of relevance, proscribing admission of the results of any chemical test administered after that period regardless of the nature of the driver's consent, is unpersuasive. This argument is completely undermined by the lack of a corresponding time limit for court-ordered chemical testing under section 1194 (3) (see, People v McGrath, 135 AD2d 60, affd on opn below 73 N.Y.2d 826) or the additional test which the driver must be permitted to have administered by a physician of his or her choosing under section 1194 (4) (b) (see, People v Finnegan, 85 N.Y.2d 53, 59).
SIMONS, J. (dissenting).
In my view the results of the blood test must be suppressed. The two-hour limitation is a legislative determination on relevance: if the sample has not been taken within two hours the evidence is inadmissible. The rule the majority establishes ignores the probative uses of the test, suggesting that somehow there is less need for a reliable blood test where defendant has "actually" consented to it. An untimely test does not become more reliable, however, just because the driver voluntarily consented.
I base my view on the legislative history of the statute. In 1941, the Legislature amended former section 70 (5) of the Vehicle and Traffic Law to allow, for the first time, the admission at trial of the results of a chemical test for blood alcohol, provided that the test had been administered within two hours of arrest. Because the human body rapidly metabolizes alcohol, the two-hour requirement was enacted to ensure that the results of the blood test constituted probative evidence of the defendant's blood alcohol level at the time of operation of the vehicle (see, Mem of Assemblyman Peterson [Assembly Sponsor] in support, Bill jacket, L 1941, ch 726; People v Gursey, 22 N.Y.2d 224, 229). Opposition to the amendment primarily centered on two issues: its constitutionality, and the question of evidentiary relevance. Some opponents *1010 thought the bill ought to require a blood test taken within two hours of vehicular operation, not of arrest, in order to provide better evidence of the driver's level of alcohol consumption (see, Report of Comm on Criminal Courts, Law and Procedure of Assn of Bar of City of NY, Bill Jacket, L 1941, ch 726). The Legislature was aware of this criticism, but also of the practicalities involved in locating, arresting, and arranging to test the driver. Thus, the two-hour limit is, to some extent, a compromise,[*] but one that provided a bright-line evidentiary rule easily applicable by law enforcement and by the courts (see, e.g., People v Brol, 81 AD2d 739; People v Keane, 76 AD2d 963; Matter of White v Melton, 60 AD2d 1000; Matter of White v Fisher, 49 AD2d 450).
The provision enacting a two-hour time limit is thus quite distinct, both in its history and its purpose, from the statutory provisions embodying the concept of deemed consent (see, Matter of Viger v Passidomo, 65 N.Y.2d 705; Matter of White v Fisher, 49 AD2d 450, supra). Even after the Vehicle and Traffic Law was amended to allow the admission into evidence of blood tests performed in accordance with the statutory provisions, relatively few such tests were admitted because of the prevalent view that only a completely voluntary test was constitutionally acceptable, and few drivers voluntarily consented (see, People v Ward, 307 N.Y. 73, 76-77 [discussing legislative history of Vehicle and Traffic Law former § 71-a]). Through the concept of deemed consent, whereby every person operating a motor vehicle on the State's highways was deemed to have thereby given consent to a blood test at the direction of law enforcement (see, Vehicle and Traffic Law former § 71-a; current Vehicle and Traffic Law § 1194), all testing was effectively rendered "voluntary," or at least consensual. The Legislature recognized, however, that some drivers, particularly when their faculties were impaired by alcohol, might physically resist the taking of a blood sample. If law enforcement officials were required to employ physical force to obtain the blood sample in those circumstances, the test results would be the product of coercion and would no longer satisfy *1011 the demands of due process. In order to obviate the need for physical force, the deemed consent amendment provides the driver with an opportunity to affirmatively withdraw that consent, upon being informed of the consequences of that withdrawal, i.e., suspension of driving privileges and admission of the driver's refusal to take the test at trial (see, Interim Report of Joint Legis Comm on Motor Vehicle Problems, 1953 McKinney's Session Laws of NY, at 1912-1928). By this means the statute created, in effect, a constitutionally legitimate device for extracting submission to the test from an otherwise reluctant driver. The consent provision was included to permit a driver who had refused to take the test to subsequently agree to it and avoid suspension, once properly informed of his rights and obligations.
The majority rely upon People v Ward (307 N.Y. 73, supra). That case came before the Court shortly after the deemed consent provisions were added to the Vehicle and Traffic Law in 1953. It presented the question whether the results of the defendant driver's blood alcohol test were properly admitted where the driver had not been informed of his right to refuse a test. However, defendant Ward had never indicated any reluctance to submit to the blood test; accordingly, we concluded that the protections embodied in the statute had no application to circumstances where the driver without question voluntarily consents to the test, and where there is thus simply no need to warn him of the consequences to induce him to give consent. Significantly, at the time of our decision in Ward, the two-hour limit was contained in an entirely different section of the Vehicle and Traffic Law from the deemed consent provisions, and clearly did not constitute one of the statutory "protections" within the contemplation of that decision. Simply stated, the Ward decision dealt with the issue of coercion, not the two-hour time limit or the probative value of the evidence. The majority, nevertheless, concludes that because the two-hour limit and the deemed consent provisions are now included within the same section of the Vehicle and Traffic Law, the holding of Ward reaches out to embrace as well the two-hour limit, even though that provision was not part of the statute that came before us in Ward.
The statutory history of the 1970 amendment which brought the two-hour limit and the deemed consent provisions into one statutory section is instructive. The primary purpose of the amendment was to render a blood alcohol content of 0.15% not merely prima facie evidence of intoxication, but an *1012 independently sufficient basis for the statutory imposition of misdemeanor liability (see, Governor's Mem approving L 1970, ch 275, 1970 McKinney's Session Laws of NY, at 3085). Almost as an afterthought, the amendment performed some housekeeping tasks as well, by making "a number of clarifying and conforming amendments" which brought all the conditions for admissibility of chemical tests into one section of the Vehicle and Traffic Law (id., at 3086). Nothing supports the inference drawn by some intermediate appellate courts (see, e.g., People v Mills, 124 AD2d 600, lv denied 69 N.Y.2d 953) and by the majority here that the Legislature thereby intended to fundamentally alter the applicability of the two-hour limit and restrict its use to only some of the procedural contexts in which it had formerly been applied. The two-hour limit was chosen by the Legislature to validate the probative uses of the results of a blood alcohol test. Those probative uses, and the concomitant need for a relevant blood sample, are not lessened because the driver has "voluntarily" consented to the test.
Order affirmed in a memorandum.
NOTES
[1] Vehicle and Traffic Law former § 71-a provided in part: "1. Any person who operates a motor vehicle * * * in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic content of his blood provided that such test is administered at the direction of a police officer having reasonable grounds to suspect such person of driving in an intoxicated condition."

The statutory language was substantially similar to that contained in the present Vehicle and Traffic Law § 1194 (2), although the two-hour requirement had not yet been incorporated into the statute.
[2] To the extent that defendant argues that his consent to the blood test was not voluntary, that issue was not raised as a basis for suppression before the trial court or otherwise preserved for our review as a matter of law.
[*] Former section 1194-a permitted the taking of a blood sample pursuant to court order in cases of death or serious injury, even though the driver has refused to submit to the test. No two-hour limit is imposed on court-ordered testing in recognition of "the flexibility which is sometimes necessary to obtain a court order during hours when court is not in session" (see, People v McGrath, 135 AD2d 60, 63, affd on opn below 73 N.Y.2d 826). The subject is now covered by section 1194.