Simons, J.
(dissenting). In my view the results of the blood test must be suppressed. The two-hour limitation is a legislative determination on relevance: if the sample has not been taken within two hours the evidence is inadmissible. The rule the majority establishes ignores the probative uses of the test, suggesting that somehow there is less need for a reliable blood test where defendant has "actually” consented to it. An untimely test does not become more reliable, however, just because the driver voluntarily consented.
I base my view on the legislative history of the statute. In 1941, the Legislature amended former section 70 (5) of the Vehicle and Traffic Law to allow, for the first time, the admission at trial of the results of a chemical test for blood alcohol, provided that the test had been administered within two hours of arrest. Because the human body rapidly metabolizes alcohol, the two-hour requirement was enacted to ensure that the results of the blood test constituted probative evidence of the defendant’s blood alcohol level at the time of operation of the vehicle (see, Mem of Assemblyman Peterson [Assembly Sponsor] in support, Bill Jacket, L 1941, ch 726; People v Gursey, 22 NY2d 224, 229). Opposition to the amendment primarily centered on two issues: its constitutionality, and the question of evidentiary relevance. Some opponents *1010 thought the bill ought to require a blood test taken within two hours of vehicular operation, not of arrest, in order to provide better evidence of the driver’s level of alcohol consumption (see, Report of Comm on Criminal Courts, Law and Procedure of Assn of Bar of City of NY, Bill Jacket, L 1941, ch 726). The Legislature was aware of this criticism, but also of the practicalities involved in locating, arresting, and arranging to test the driver. Thus, the two-hour limit is, to some extent, a compromise,* but one that provided a bright-line evidentiary rule easily applicable by law enforcement and by the courts (see, e.g., People v Brol, 81 AD2d 739; People v Keane, 76 AD2d 963; Matter of White v Melton, 60 AD2d 1000; Matter of White v Fisher, 49 AD2d 450).
The provision enacting a two-hour time limit is thus quite distinct, both in its history and its purpose, from the statutory provisions embodying the concept of deemed consent (see, Matter of Viger v Passidomo, 65 NY2d 705; Matter of White v Fisher, 49 AD2d 450, supra). Even after the Vehicle and Traffic Law was amended to allow the admission into evidence of blood tests performed in accordance with the statutory provisions, relatively few such tests were admitted because of the prevalent view that only a completely voluntary test was constitutionally acceptable, and few drivers voluntarily consented (see, People v Ward, 307 NY 73, 76-77 [discussing legislative history of Vehicle and Traffic Law former § 71-a]). Through the concept of deemed consent, whereby every person operating a motor vehicle on the State’s highways was deemed to have thereby given consent to a blood test at the direction of law enforcement (see, Vehicle and Traffic Law former § 71-a; current Vehicle and Traffic Law § 1194), all testing was effectively rendered "voluntary,” or at least consensual. The Legislature recognized, however, that some drivers, particularly when their faculties were impaired by alcohol, might physically resist the taking of a blood sample. If law enforcement officials were required to employ physical force to obtain the blood sample in those circumstances, the test results would be the product of coercion and would no longer satisfy *1011 the demands of due process. In order to obviate the need for physical force, the deemed consent amendment provides the driver with an opportunity to affirmatively withdraw that consent, upon being informed of the consequences of that withdrawal, i.e., suspension of driving privileges and admission of the driver’s refusal to take the test at trial (see, Interim Report of Joint Legis Comm on Motor Vehicle Problems, 1953 McKinney’s Session Laws of NY, at 1912-1928). By this means the statute created, in effect, a constitutionally legitimate device for extracting submission to the test from an otherwise reluctant driver. The consent provision was included to permit a driver who had refused to take the test to subsequently agree to it and avoid suspension, once properly informed of his rights and obligations.
The majority rely upon People v Ward (307 NY 73, supra). That case came before the Court shortly after the deemed consent provisions were added to the Vehicle and Traffic Law in 1953. It presented the question whether the results of the defendant driver’s blood alcohol test were properly admitted where the driver had not been informed of his right to refuse a test. However, defendant Ward had never indicated any reluctance to submit to the blood test; accordingly, we concluded that the protections embodied in the statute had no application to circumstances where the driver without question voluntarily consents to the test, and where there is thus simply no need to warn him of the consequences to induce him to give consent. Significantly, at the time of our decision in Ward, the two-hour limit was contained in an entirely different section of the Vehicle and Traffic Law from the deemed consent provisions, and clearly did not constitute one of the statutory "protections” within the contemplation of that decision. Simply stated, the Ward decision dealt with the issue of coercion, not the two-hour time limit or the probative value of the evidence. The majority, nevertheless, concludes that because the two-hour limit and the deemed consent provisions are now included within the same section of the Vehicle and Traffic Law, the holding of Ward reaches out to embrace as well the two-hour limit, even though that provision was not part of the statute that came before us in Ward.
The statutory history of the 1970 amendment which brought the two-hour limit and the deemed consent provisions into one statutory section is instructive. The primary purpose of the amendment was to render a blood alcohol content of 0.15% not merely prima facie evidence of intoxication, but an *1012 independently sufficient basis for the statutory imposition of misdemeanor liability (see, Governor’s Mem approving L 1970, ch 275, 1970 McKinney’s Session Laws of NY, at 3085). Almost as an afterthought, the amendment performed some housekeeping tasks as well, by making "a number of clarifying and conforming amendments” which brought all the conditions for admissibility of chemical tests into one section of the Vehicle and Traffic Law (id., at 3086). Nothing supports the inference drawn by some intermediate appellate courts (see, e.g., People v Mills, 124 AD2d 600, lv denied 69 NY2d 953) and by the majority here that the Legislature thereby intended to fundamentally alter the applicability of the . two-hour limit and restrict its use to only some of the procedural contexts in which it had formerly been applied. The two-hour limit was chosen by the Legislature to validate the probative uses of the results of a blood alcohol test. Those probative uses, and the concomitant need for a relevant blood sample, are not lessened because the driver has "voluntarily” consented to the test.
Judges Bellacosa, Smith, Levine and Ciparick concur; Judge Simons dissents in an opinion in which Chief Judge Kaye and Judge Titone concur.
Order affirmed in a memorandum.

 Former section 1194-a permitted the taking of a blood sample pursuant to court order in cases of death or serious injury, even though the driver has refused to submit to the test. No two-hour limit is imposed on court-ordered testing in recognition of "the flexibility which is sometimes necessary to obtain a court order during hours when court is not in session” (see, People v McGrath, 135 AD2d 60, 63, affd on opn below 73 NY2d 826). The subject is now covered by section 1194.