■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MATTHEW CENTERBAR, Appellant. [914 NYS2d 784]—

Spain, J. Appeal from a judgment of the County Court of Warren County (Hall, Jr., J.), rendered May 20, 2009, convicting defendant upon his plea of guilty of the crime of vehicular manslaughter in the first degree.

Defendant was operating a motorcycle on the evening of August 9, 2008 when he was involved in a one-vehicle accident in the Town of Queensbury, Warren County, resulting in the death of his passenger, Joshua Bierman. A police officer for the Warren County Sheriff's Department, Jason Martindale, responded to the scene and spoke with defendant. Martindale detected the smell of alcohol on defendant, who was transported to the hospital where he was treated for his injuries. When asked at the hospital, defendant consented orally and in writing to having blood drawn by the nurse for use by the police. Defendant was not arrested. A blood test yielded a blood alcohol content of .14%. Defendant was subsequently indicted for vehicular manslaughter in the first degree and two counts of driving while intoxicated. After a hearing, County Court denied defendant's motion to suppress the blood alcohol test results, finding as a factual matter that defendant had voluntarily consented to the test and ruling that police were not required to arrest him before obtaining that consent. Defendant then entered a guilty plea to vehicular manslaughter in the first degree and was sentenced to 2⅓ to 7 years in prison. Defendant now appeals.

Defendant's primary contentions on appeal are that police were required to place him under arrest prior to obtaining a

blood sample with his consent, and that his consent was not the product of voluntary free will given his injuries and the lack of *Miranda* warnings. These claims do not withstand analysis.

Defendant's premise is that police are required to arrest a person prior to obtaining consent to draw blood if they have reasonable suspicion that the person was driving under the influence of alcohol or drugs (*see* Vehicle and Traffic Law § 1192), relying upon the implied consent law contained in Vehicle and Traffic Law § 1194 (2) (a) (1). Under that implied consent provision, any person who operates a motor vehicle in this state is deemed to have consented to a chemical blood alcohol test conducted at the direction of a police officer possessing reasonable grounds to believe such person to have been operating a motor vehicle in violation of Vehicle and Traffic Law § 1192, provided the test is administered "within two hours after such person has been placed under arrest for any such violation" (Vehicle and Traffic Law § 1194 [2] [a] [1]; *see People v Goodell*, 79 NY2d 869, 870 [1992]; *People v Morrisey*, 21 AD3d 597, 598 [2005]). Unlike an actual consent situation in which a driver voluntarily submits to a test, the implied consent provision is directed at those drivers *required* to submit to the test, who face immediate suspension and subsequent revocation of their license to drive upon refusal to submit (*see People v Ward*, 307 NY 73, 77-78 [1954]; *see also* Vehicle and Traffic Law § 1194 [2] [b]). If a person so required to submit actually refuses, a court order is required to compel the test (*see* Vehicle and Traffic Law § 1194 [3] [b]), but the person's express consent is not required under the implied consent law (*see People v Morrisey*, 21 AD3d at 598). Indeed, police have the authority under the implied consent provision to draw blood within the two-hour time-frame from a comatose person for whom they have reasonable grounds to suspect of driving under the influence, notwithstanding the inability to formally arrest that person (*see People v Goodell*, 79 NY2d at 870-871; *People v LeRow*, 70 AD3d 66, 70-71 [2009]). Moreover, "the two-hour limitation . . . has no application . . . where . . . defendant expressly and voluntarily consented to administration of the blood test" (*People v Atkins*, 85 NY2d 1007, 1009 [1995]). The Court of Appeals long ago recognized that the implied consent law "has no application where, as here, the defendant voluntarily submitted to the test," explaining that "it is difficult to perceive any necessity for the protections embodied in [the implied consent provision] where the driver freely volunteers to take the test" (*People v Ward*, 307 NY at 76, 77). The Court reasoned that a test on voluntary consent is on parity with a warrantless consensual search and seizure; the results of both are admissible (*id.* at 78).

Thus, we hold that where, as here, police possess reasonable grounds to believe that a driver has been driving under the influence, they are authorized to direct that the driver's blood be drawn with the voluntary consent of the driver to submit to a chemical test and are not required to arrest the driver before obtaining such consent (*see People v Gaffney*, 299 AD2d 922, 923 [2002], *lv denied* 99 NY2d 582 [2003]; *People v Craig*, 262 AD2d 1074, 1074-1075 [1999], *lv denied* 93 NY2d 1016 [1999]). That is, the arrest requirement in the implied consent law, like the two-hour time frame therein (*see People v Atkins*, 85 NY2d at 1008-1009), has no application where a driver expressly and voluntarily consents to the administration of a blood alcohol test.

Turning to defendant's argument that his consent was not the product of free will, we perceive no grounds upon which to disagree with County Court's factual determination, after an evidentiary hearing, that, despite his significant injuries, defendant's consent to the blood test was voluntary (*see People v Gaffney*, 299 AD2d at 923; *People v Craig*, 262 AD2d at 1074-1075; *People v Verdile*, 119 AD2d 891, 892 [1986]; *cf. People v Skardinski*, 24 AD3d 1207, 1208 [2005]). Martindale testified that defendant was conscious and responsive to the emergency medical providers, and he communicated that he had been operating the motorcycle. When defendant arrived at the hospital, he was in pain but communicative, admitted drinking but now claimed that he had been the passenger. Martindale identified himself and asked defendant for consent to have the nurse draw blood and defendant agreed. Defendant was not restrained or sedated. At the officer's request, the treating nurse then asked defendant for consent, explaining that the test was for the police, and defendant again verbally consented. The nurse testified that defendant was then in stable condition and she believed he understood her questions even while expressing that he was in pain and yelling, and he signed a written consent form while in a reclined position.\* The nurse described defendant as fully alert, in moderate distress, and aware of his name, where he was and the day.

The record indicates that after defendant was taken for X rays and a CT scan (which revealed a collapsed lung), his condition deteriorated, his blood pressure dropped and he exhibited signs of internal blood loss. The treating physician, Jeffrey Flynn, testified that while defendant was stable and conversant initially and when sent to radiology, upon his return he was in

---

\* That written consent could not be produced by the hospital at the hearing.

distress and was experiencing increased pain and breathing difficulty; he opined that defendant was at that point incapable of consenting to a needed emergency procedure before being taken to surgery. While the precise time of defendant's consent to the blood test could not be established, the record supports the conclusion that it was obtained prior to defendant's deterioration, at a time when he was conscious and capable of understanding the requests and of voluntarily assenting. Based upon the foregoing, there was ample support for County Court's factual determination that defendant's consent was knowing and voluntary (*see People v Verdile*, 119 AD2d at 892).

Finally, while defendant's hospital medical records were privileged (*see* CPLR 4504 [a]), he placed his physical and mental condition at the time of his consent—as well as his condition before and after—directly in issue by calling the emergency room treating physician to testify regarding his ability to consent, thereby waiving the privilege (*see People v Strawbridge*, 299 AD2d 584, 590-591 [2002], *lvs denied* 99 NY2d 632 [2003], 100 NY2d 599 [2003]). Defendant called upon that physician, and the treating nurse during cross-examination, to testify to their recollection—and based upon the medical records—regarding his condition, treatment and capacity at the hospital and at the time of his consent and, thus, no error occurred.

Cardona, P.J., Kavanagh, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.

