■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY GALLO, Appellant. [20 NYS3d 685]—

McCarthy, J.P. Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered June 6, 2013, upon a verdict convicting defendant of the crimes of aggravated vehicular homicide, manslaughter in the second degree and leaving the scene of an incident without reporting and the traffic infraction of failure to stop at a red light.

At approximately 7:30 p.m. on November 16, 2011, defendant struck and fatally injured the victim with his pickup truck as he ran a red light. Defendant immediately left the scene. After a tip, law enforcement was able to track down defendant's vehicle and then defendant. Following a jury trial, defendant was convicted of aggravated vehicular homicide, manslaughter in the second degree, leaving the scene of an incident without reporting and failing to stop at a red light. Defendant was sentenced, as a second felony offender, to 12½ to 25 years in prison. Defendant appeals, and we affirm.

Initially, defendant's contention that a sample of his blood should have been suppressed because law enforcement lied to him about the purpose for which it sought the sample is unpreserved, as defendant did not apprise County Court of this alleged error (see People v Durrin, 32 AD3d 665, 666 [2006]). In any event, defendant's contention is without merit. The uncontested evidence established that defendant agreed to the administration of the blood test. The voluntariness of defendant's consent to that intrusion is not undermined by law enforcement's failure to apprise defendant that it sought the blood test for the purpose of obtaining incriminating evidence against him (see generally People v Atkins, 85 NY2d 1007, 1008 [1995]; People v Centerbar, 80 AD3d 1008, 1009-1010 [2011]).

Next, defendant contends that his convictions for aggravated vehicular homicide and manslaughter in the second degree were based on legally insufficient evidence or were against the weight of the evidence. More specifically, defendant contends that both convictions must fall due to the lack of evidence—or

lack of persuasive evidence—that he was impaired by drugs at the time of the accident. As is relevant to this particular challenge, the crime of aggravated vehicular homicide requires proof of a defendant's impairment by drugs at the time of the accident (*see* Penal Law §§ 125.12 [1]; 125.14; *People v Stickler*, 97 AD3d 854, 854 [2012], *lv denied* 20 NY3d 989 [2012]). Contrary to defendant's contention, however, the jury was not required to find that defendant was impaired by drugs in order to find him guilty of manslaughter in the second degree (*see People v Briskin*, 125 AD3d 1113, 1119 [2015], *lv denied* 25 NY3d 1069 [2015]). A person commits manslaughter in the second degree when he or she recklessly causes the death of another person (*see* Penal Law § 125.15 [1]). A person acts recklessly when he or she "is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists" (Penal Law § 15.05 [3]). "A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto" (Penal Law § 15.05 [3]).

Turning to the record, one eyewitness testified that, after vehicles had stopped at the red light, a truck revved its engine, passed the stopped cars—by using the right turn lane—and then proceeded straight through the intersection "like a bat out of hell." Another witness testified that, after hearing a loud noise, he observed a truck traveling fast. A third eyewitness explained that, at the time, he believed he was witnessing a joke because of the manner in which the truck "blasted right through" the victim, who had been crossing the intersection, and then kept traveling without braking or stopping.

Another witness, who acknowledged that he knew defendant personally and had used drugs with him on occasion, testified that he was certain that he had been with defendant earlier on the evening of the accident. According to the same witness's timeline, defendant had arrived at his house approximately 1½ to 2½ hours before the accident. That witness testified that they proceeded to smoke crack cocaine, and then defendant eventually drove away in his pickup truck. A police officer who had conducted an accident reconstruction testified that there were no skid marks in the intersection, which indicated that defendant had never used his brakes. He further testified that, based on his reconstruction, defendant was traveling approximately 5 to 15 miles per hour over the speed limit at the

time of the accident.* A forensic scientist for the State Police testified that the blood sample taken from defendant approximately 18 hours after the accident contained ecgonine methyl ester—a breakdown of cocaine—and morphine. She acknowledged that she could not opine as to when defendant had ingested such drugs.

This evidence was legally sufficient to permit the jury to find that defendant was impaired by drugs (*see People v Briskin*, 125 AD3d at 1119) so as to support a conviction for aggravated vehicular homicide. The evidence was also legally sufficient for the jury to conclude that defendant acted with the requisite recklessness required for manslaughter in the second degree, whether based on a conclusion that defendant was aware of and consciously disregarded the substantial and unjustifiable risk of death that he created, or that his unawareness of such risk was solely the result of his voluntary intoxication (*see People v Hart*, 266 AD2d 698, 700 [1999], *lv denied* 94 NY2d 880 [2000]). Further, deferring to the jury's credibility determinations, the convictions were not against the weight of the evidence (*see People v Briskin*, 125 AD3d at 1120). Defendant's remaining contentions are without merit.

Rose, Lynch and Devine, JJ., concur. Ordered that the judgment is affirmed.

---

* The officer explained that he made this speed estimate based on the fact that defendant's vehicle threw the victim 85 feet. He further acknowledged that this was necessarily a conservative estimate of defendant's speed, because the victim would have traveled further had the vehicle not propelled her into a light pole.