COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty,
            Beales, Powell and Alston
Argued at Richmond, Virginia


LAWRENCE W. ROSEBOROUGH

                                                                    OPINION BY
v.        Record No. 2377-07-4                        JUDGE RANDOLPH A. BEALES
                                                                 FEBRUARY 16, 2010

COMMONWEALTH OF VIRGINIA


                            UPON A REHEARING EN BANC

              FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                                John E. Kloch, Judge

              Hunter A. Whitestone (Whitestone, Brent, Young & Merril, P.C., on
              brief), for appellant.

              Susan M. Harris, Assistant Attorney General (William C. Mims,
              Attorney General, on brief), for appellee.


        Lawrence W. Roseborough (appellant) was convicted by the trial court of driving while

intoxicated (DWI), in violation of Code § 18.2-266.  After granting his petition for appeal, a panel

of this Court affirmed his conviction, with one judge dissenting.  Appellant's petition for *en banc*

review by this Court was then granted.

        Appellant contends that the trial court "err[ed] in admitting" a certificate of analysis

containing the results of his breath test because the "test was not administered pursuant to the

implied consent law."  Essentially, appellant argues that, although he asked the arresting officer to

administer a breath test – without the officer prompting or even mentioning the test to appellant –

the trial court should have excluded the results of the test to which he voluntarily submitted.  He

bases this argument on the fact that, although the officer had probable cause for appellant's arrest,

he had not seen appellant commit the DWI, as required for a misdemeanor arrest under Code § 19.2-81.

Assuming without deciding that the officer lacked the statutory authority to arrest appellant, we find the trial court did not err in admitting the certificate of analysis from the breath test into evidence. We find the officer did not need to rely on the implied consent statute to obtain the breath sample from appellant because appellant expressly volunteered to provide the sample before the officer could even mention the provisions of the implied consent statute to him. Thus, we affirm appellant's conviction.

## I. BACKGROUND[1]

On January 15, 2007, Charles Banks was working as a security guard at the Watergate at Landmark apartment complex in the City of Alexandria. At about 2:00 a.m., he "[h]eard an accident." Banks rushed to the scene, which was on the complex's private road rather than on a public street. As he arrived, Banks observed appellant standing beside the open, driver's side door of a pickup truck that had run over the curb of the private road and gotten "stuck" on a hill.

Officer Seth Weinstein responded within thirty minutes of the crash. Appellant told Officer Weinstein that his friend, Jay, was driving the truck, but Jay "ran off." Appellant could not tell the officer Jay's last name, his phone number, or his address, other than to say that Jay lived somewhere in the apartment complex. Appellant admitted that he had been drinking at a bar in the District of Columbia. Appellant then said, "I brought [Jay] back here," which the officer believed was an admission that appellant had been driving the truck.

---

[1] We review the evidence on appeal in the light most favorable to the party who prevailed below, here, the Commonwealth, and also grant to the Commonwealth all reasonable inferences fairly deducible from that evidence. Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002).

- 2 -

Appellant smelled of alcohol, he swayed as he walked, his eyes were bloodshot and watery, and he spoke very loudly. He refused to perform any field sobriety tests at the scene. The officer arrested him for DWI based on appellant's admissions and the officer's observations at the scene. In a search pursuant to that arrest, Officer Weinstein discovered a remote key for the truck in appellant's pocket. The ignition key was still in the ignition of the truck.

As Officer Weinstein was transporting appellant to the detention center after his arrest, appellant said "he was considering blowing [into the Intoxilyzer[2]] for [the officer] because [he] had been so nice." Appellant added that "he would blow if [the officer] would consider releasing him if he blew into the Intox[ilyzer]." Officer Weinstein responded that, if appellant's breath test resulted in a blood/breath alcohol concentration (BAC) reading of .05 or less, then appellant "would be presumed to be sober in Virginia and he would be released and not charged" with DWI. When they arrived at the detention center, as the officer was reading the Miranda warnings to him, appellant "brought the subject up and said that he was willing to blow and he wanted to blow." Up to that point, the officer had not decided whether he would even bring up the breath test, as he was not sure that the implied consent law applied when, as here, a suspect was arrested on private property. However, as the officer put it, appellant "made the decision" for him when appellant volunteered to take the test after being informed of his Miranda rights. Officer Weinstein administered the test, appellant blew into the Intoxilyzer, and the breath test resulted in a BAC reading of .09.

At trial,[3] Officer Weinstein testified about the events leading to appellant's arrest and appellant's offer to take the breath test. The officer testified that he was a certified Intoxilyzer

---

[2] An Intoxilyzer is a machine used by the police to take a breath sample and to test that sample for alcohol content.

[3] At trial, appellant also made a motion to suppress the evidence collected by Officer Weinstein, arguing that the officer effectuated the arrest without probable cause. The trial court

operator, that he administered the test, that he observed appellant for twenty minutes before administering the test, and that he did not observe any behavior that would have affected the outcome of the test. The officer identified the certificate of analysis that was created when he administered the test, and he identified his signature on the attestation line of the certificate. The Commonwealth then moved for the introduction of the certificate into evidence.

Appellant objected to introduction of the certificate. He argued that, because the officer did not have statutory authority for his arrest under Code § 19.2-81 (both because the DWI, a misdemeanor offense in this case, did not occur in the officer's presence and because the accident did not occur on a public highway), the implied consent statute did not apply to say that appellant was "deemed as a condition of such operation [of his car] to have consented to a blood test or breath test." Therefore, he contended, the certificate was not admissible. Appellant did not argue that the certificate failed to meet any of the evidentiary requirements found in Code § 18.2-268.9 for admission of a certificate of analysis nor did he make any argument regarding hearsay or other rules of evidence. Instead, appellant's sole objection to the introduction of the certificate was that the situation did not constitute "a proper arrest" for the application of the implied consent law *to obtain the breath sample*, so the certificate was inadmissible. In response to the argument that he voluntarily took the test,[4] appellant argued that agreeing to the test did

denied this motion. Appellant requested appellate review of this ruling in his petition for appeal, but this Court did not grant his petition in relation to that question presented. Therefore, the issue of probable cause is not before us, and we may not review the trial court's finding that the officer had probable cause to arrest appellant. See Rules 5A:12 and 5A:15.

[4] The Supreme Court's recent decision in Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009) (as amended October 22, 2009), is not applicable to this case for the following reasons. First, a significant portion of the testimony at trial of the Commonwealth's witness, Officer Weinstein, addressed appellant's volunteering to take the breath test. In fact, this evidence was so pervasive that, in addition, appellant's trial counsel (who is also appellant's counsel on appeal) apparently felt he had to actually address the Commonwealth's evidence and argument that appellant had volunteered to take the test. Indeed, appellant's counsel stated during his argument to the trial court, "At one point, if I just add [sic] [heard], the

not validate his arrest and that the presumption in Code § 18.2-269 would not apply if the breath

sample were not obtained pursuant to the implied consent statute.

The trial court overruled appellant's objections and admitted the certificate.  The court

then found appellant guilty of DWI.

## II.  ANALYSIS

When examining the issues involved in this appeal, we are mindful that we review the

evidence presented to the trial court in the light most favorable to the Commonwealth, as the

party that prevailed below, see Flowers v. Commonwealth, 49 Va. App. 241, 249, 639 S.E.2d

313, 317 (2007); however, we review questions of law *de novo*, see Williams v. Commonwealth,

53 Va. App. 50, 55, 669 S.E.2d 354, 356 (2008).

### A.  The Question Presented by Appellant

In his argument to the trial court, appellant claimed that his arrest was unlawful and,

therefore, Code § 18.2-268.2(A), commonly referred to as the implied consent statute, required the

exclusion of the certificate of analysis from his trial.  He did not argue to the trial court that a

different foundation for the admission of the certificate applied if the breath test was collected

_____

Commonwealth argue that while the defendant *voluntarily* took the test, and therefore it was a *voluntary action* by the defendant, therefore it should come in against him."  (Emphasis added).

Thus, the argument that the certificate of analysis should be admitted because appellant voluntarily requested the breath test was first made in the trial court.  Contra Whitehead, 278 Va. at 114, 677 S.E.2d at 270 (where "[t]he first appearance of the concealment theory in the record is in the opinion of the Court of Appeals").  As noted above, not only did the Commonwealth present this argument through Officer Weinstein's testimony, but, in addition, appellant's own trial counsel also actually addressed this very argument before the trial judge.  During argument before this Court, appellant's counsel acknowledged that the trial court heard argument on whether appellant's explicit and voluntary consent to take the test made the certificate admissible.  Therefore, it is clear that both appellant and the trial court were certainly "on notice" at the trial level of the argument that the certificate was admissible because appellant had voluntarily requested the test.  Id. at 115, 677 S.E.2d at 270.

Moreover, our analysis here also does not require any new factual determinations.  Id. The uncontradicted evidence proved appellant volunteered to take the breath test, and his counsel admitted during sentencing that appellant "voluntarily took the test."

without the reliance on the implied consent statute, as he now argues before this Court *en banc*. Instead, he argued to the trial court that the implied consent statute *prohibited* admitting this certificate, essentially claiming that a BAC certificate is not admissible *under any set of circumstances* unless the exact provisions of the implied consent statute are followed.[5]

Appellant continued this argument when he framed his question presented, which reads "Did the trial court err in admitting the certificate of analysis into evidence over the defendant's objection that the breath test was not administered pursuant to the implied consent law?" This question presented clearly assumes that, if a breath test sample is obtained without reliance on the explicit procedures found in the implied consent statute, then the test results are *always* inadmissible, i.e., if an appellant voluntarily consents to take the test without reference to the implied consent law, then the certificate never comes into evidence at trial.[6] Thus, the question is premised on a particular interpretation of the implied consent law – one that reads into this section of the Code a provision prohibiting a trial court from ever accepting into evidence a BAC certificate that was created without reliance on the statutory requirement that drivers consent to providing a breath sample when they drive on a public highway.

---

[5] Appellant's argument at trial was not based on a failure to present the appropriate foundation for introduction of the certificate. Instead, he argued that the implied consent law *prohibited* introduction of the certificate, an argument that had more in common with a motion to suppress than an objection based on the rules of evidence. Appellant simply argued that, because the test was not *administered* pursuant to the implied consent statute, the certificate was not admissible. The dissent, however, shifts appellant's argument to a position that he never argued to the trial court and that is not raised by his Question Presented – i.e., that a sufficient foundation was not laid for introduction of the certificate at trial.

[6] We note that appellant's Question Presented claims the alleged error occurred because the breath test itself was not "administered" pursuant to the implied consent statute. The question does not allege that an error occurred because the certificate failed to meet some foundation requirement for admission of evidence established in the Code or in the common law of Virginia.

It is the duty of courts to apply the correct legal principles, and not to blindly follow incorrect "legal" doctrines presented by the parties on appeal. See U.S. Nat'l Bank of Oregon v. Indept. Ins. Agents of Am., 508 U.S. 439, 446-47 (1993) (noting that, even if the parties agree "on the legal issue presented," a court is not limited to the legal theories presented by the parties and may consider and apply alternative interpretations of the law because, otherwise, the courts would be forced to issue advisory opinions about the application of legal frameworks that do not actually exist); Elliott v. Commonwealth, 267 Va. 464, 472, 593 S.E.2d 263, 268 (2004) ("The Court cannot be forced to accept a flawed construction of a statute or prevented from saving a statute from invalidity simply because of an oversight or tactical decision by one or both of the parties."). Therefore, in order to answer appellant's question as it is framed, this Court must first address the legal premise underlying the question presented – that the implied consent law is a rule for excluding evidence that is otherwise admissible – and determine if this premise is valid.

## B. Actual Consent to Administer a Breath Test

For the purposes of this opinion, we assume without deciding that Officer Weinstein did not have statutory authority to arrest appellant. See Code §§ 19.2-81 and 18.2-266. We note that our discussion here should be guided by recognizing the "well-settled appellate principle" that an appellant "show that the [trial] court abused its discretion" in admitting evidence at trial. Joseph v. Commonwealth, 249 Va. 78, 85, 452 S.E.2d 862, 867 (1995).

### 1. Code § 18.2-268.2

Our analysis of this case begins with the uncontested fact that Officer Weinstein never read the implied consent law to appellant and did not obtain appellant's consent to blow into the Intoxilyzer by informing him of the implied consent law. Instead, appellant volunteered to take the test before Officer Weinstein had even decided if he could use the implied consent law to obtain a breath sample from appellant – and after Officer Weinstein had informed appellant of

his Miranda rights. Appellant *actually initiated* the taking of the test and *explicitly* volunteered to take it before he could be informed of the implied consent statute.[7] In short, Officer Weinstein had not even *attempted* to obtain appellant's consent before appellant voluntarily and expressly consented to take the test – in fact, he *asked* to take it.

Code § 18.2-268.2(A) addresses when a person is *deemed to consent* to a breath test. The statute simply states:

> Any person, whether licensed by Virginia or not, who operates a motor vehicle upon a highway, as defined in § 46.2-100, in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2-266, 18.2-266.1, or subsection B of § 18.2-272 or of a similar ordinance within three hours of the alleged offense.

Code § 18.2-268.2(A). In other words, a person driving on Virginia's roads has implicitly consented to take a breath test, so officers can refer to this statute when they want to convince a driver to provide a sample for a breath test.[8] This statute does not address *all* instances when a breath test may be taken and includes no language addressing the *admissibility* of the resulting certificates of analysis at trial. The statute contains no language addressing situations such as the one here, where a defendant actually volunteered to take the breath test before an officer could tell him about the implied consent statute. Where a driver asks to have a breath test taken, as

---

[7] At trial and on appeal, appellant did not argue that his willingness to submit to the test was involuntary or tainted in any way. He argued simply that the fact that the officer did not have authority to arrest him – along with the requirement that a lawful arrest precede a breath test taken under the implied consent statute – required that the trial court exclude the certificate of analysis from his Intoxilyzer test. Appellant makes this argument even though he actually initiated the taking of the breath test himself without ever being informed of the provisions of the implied consent statute.

[8] Under Code § 18.2-268.3, a driver may be subjected to civil or criminal penalties for "unreasonably" refusing to take a breath or blood test pursuant to Code § 18.2-268.2.

occurred here, the implied consent statute on its face has no relevance. See Hubbard v. Henrico Ltd. Pshp., 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) (courts should look to the plain language of statutes).

### 2. Thomas and Durant

Appellant points to several Virginia appellate decisions that have addressed the admissibility of breath test certificates under Code § 18.2-268.2 and argues that these cases required the exclusion of the certificate of analysis in this case. However, these cases are clearly distinguishable and do not support appellant's position.

In Thomas v. Town of Marion, 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983), Thomas was "not properly arrested" under the Code because the arresting officer did not have a warrant nor did he observe the accident that led to the misdemeanor charge. See Code § 19.2-81. After this arrest, the officer informed Thomas of the implied consent statute. 226 Va. at 253, 308 S.E.2d at 121. Later in the evening, Thomas was properly arrested pursuant to a warrant, but this arrest was more than two hours[9] after the accident, and the administration of the breath test occurred after this second arrest. In finding that the trial court should have excluded the certificate of analysis from Thomas's breath test, the Supreme Court explained:

> Since the arrest was untimely, the defendant is not deemed to have consented to the testing of his breath under the "implied consent" law. Moreover, defendant's *actual consent* in this case was invalid because it was based upon a belief, generated by the officer's recitation of the law, that he was bound to submit to a test. Hence, receipt of the certificate in evidence was improper.

Id. at 254, 308 S.E.2d at 122 (emphasis added).

---

[9] At the time of Thomas's arrest, Code § 18.2-268, the precursor to the current implied consent statute, required that a suspect be arrested within two hours of an accident in order for the implied consent law to apply. The current statute extends the time to three hours. Code § 18.2-268.2(A). Appellant has never argued that the test was administered more than three hours after the accident.

- 9 -

The Supreme Court did not conclude its analysis in Thomas, as appellant would now have us do, by simply finding that the arrest was unlawful or "untimely." Instead, the Court specifically continued its analysis by also noting that Thomas's *actual consent* was invalid because the officer obtained that consent by informing Thomas that "he was bound to submit to a test," when the law did not actually require that Thomas consent to provide a breath sample because his arrest was more than two hours after the accident. Id. Thus, the Supreme Court clearly considered *both* whether the provisions of the implied consent statute were followed *and* whether Thomas had actually consented to take the breath test. The Supreme Court found that neither situation, based on the facts in Thomas, permitted the trial court to accept the certificate as evidence. Thus, the Supreme Court indicated that actual consent can provide officers with authority to conduct a breath test independent of the provisions of the implied consent statute.

Here, in contrast to the facts in Thomas, actual consent was legitimately obtained for the test. Officer Weinstein never informed appellant about the provisions of the implied consent statute nor had he even raised the issue of an Intoxilyzer test. Thus, appellant's consent was not tainted by a belief that he was required to provide the sample under Virginia's implied consent statutes, as was the situation in Thomas. Before the officer could even decide whether the provisions of the implied consent statute applied in this situation, appellant initiated this discussion by saying, without any previous mention of implied consent or of taking a breath sample for testing, that he wanted to take the Intoxilyzer test.

As appellant *volunteered* to provide the breath sample, without being influenced by the provisions of the implied consent law, those provisions are irrelevant here. Thomas, rather than supporting appellant's argument, instead suggests – with its discussion of actual consent – that consent to take a breath test, obtained without any reliance on the provisions of the implied consent statute, can produce a certificate of analysis that is not excluded by that statute.

- 10 -

In Durant v. City of Suffolk, 4 Va. App. 445, 448, 358 S.E.2d 732, 734 (1987), the same basic sequence of events occurred as in Thomas. An officer arrested Durant without having statutory authority for the arrest, the officer then informed Durant of the implied consent law, and Durant subsequently submitted to a breath test. Id. This Court, relying on Thomas, found the results of that test should have been excluded from the trial. Id. at 449, 358 S.E.2d at 734. Therefore, Durant simply reapplies the same test explained in Thomas.[10]

Thomas and Durant hold that a suspect cannot legitimately consent to a breath test if (1) he is unlawfully or untimely arrested *and* if (2) the officer informs the suspect of the provisions of *the implied consent law*, *and* if (3) the suspect then consents to provide a breath sample under the mistaken belief that he could be penalized *under the implied consent law* for refusing to cooperate. See Bristol v. Commonwealth, 272 Va. 568, 574-75, 636 S.E.2d 460, 464 (2006) (A "driver's timely arrest triggers the statutory consent requirement, [so] the arrest must be completed before the driver may be *required* to take the test." (emphasis added)).[11] Thomas and Durant, however, do not address the facts here, where the breath test was not obtained pursuant to the implied consent law. Here, independent of the implied consent law and without the officer ever telling him about Code § 18.2-268.2, appellant *actually asked* to take the test. Unlike the defendants in Durant and Thomas, appellant initiated the discussion here and, without being informed that he was presumed "to have consented to have samples" of his breath taken under Code § 18.2-268.2, appellant told the officer that he "wanted to blow" into the Intoxilyzer.

---

[10] Another important distinction exists between this case and Durant. In Durant, the Court found the officer did not have probable cause to arrest Durant. 4 Va. App. at 448, 358 S.E.2d at 734. Here, the trial court found the officer had probable cause to arrest appellant (we presume in this opinion, *supra*, only that the officer did not have *statutory* authority to arrest him). That probable cause finding by the trial court is not subject to review here as the question of probable cause is not before us in this appeal. See *supra* fn. 3.

[11] Under Code § 18.2-268.3, a driver unreasonably refusing to submit to a breath test can have his or her driver's license suspended for a year or more.

Unlike the officers in <u>Durant</u> and <u>Thomas</u>, Officer Weinstein did not use the implied consent statute to prod appellant into taking the breath test. Therefore, the provisions of Code § 18.2-268.2 do not operate to exclude the certificate here.

### 3. Approaches of Other States

Other states with statutes similar to Code § 18.2-268.2 have considered arguments like those raised by appellant here. In <u>People v. Ward</u>, 120 N.E.2d 211 (N.Y. 1954), the police asked, in a "'gentlemanly manner,'" if Ward would submit to a blood test, and he then agreed to the test without any mention by the police officers of the state's implied consent law. [12] The Court of Appeals of New York found the state's implied consent law did not apply, and, therefore, the test's results were admissible independent of that statute. <u>Id.</u> at 212-14. In <u>Lunceford v. Northport</u>, 555 So. 2d 246, 247 (Ala. Crim. App. 1988), an officer arrested Lunceford as he sat in a car that was parked in a private parking lot. The officer then asked him if he was willing to take a breath test, "and he said yes." <u>Id.</u> at 248. The Alabama appellate court agreed with Lunceford that the Alabama implied consent statute applied only when a person drove on public highways, so the statute did not require that Lunceford provide a breath

---

[12] At the time, Section 71-a of the New York Vehicle and Traffic Law provided, in part:

> "1. Any person who operates a motor vehicle . . . in this state shall
> be deemed to have given his consent to a chemical test of his
> breath, blood, urine, or saliva for the purpose of determining the
> alcoholic content of his blood provided that such test is
> administered at the direction of a police officer having reasonable
> grounds to suspect such person of driving in an intoxicated
> condition. If such person refuses to submit to such chemical test
> the test shall not be given but the commissioner shall revoke his
> license . . . to drive . . . ."

<u>Ward</u>, 120 N.E.2d at 212. The court found that it did not need to address Ward's argument that the officers were required to apprise him of the provisions of the statute before administering the test "where, as here, the defendant voluntarily submitted to the test and there is no claim or hint of coercion." <u>Id.</u> at 213.

sample to the police.[13]  Id.  However, rather than ruling that the results of the defendant's test should have been excluded, the appellate court remanded the case for the trial court to determine if Lunceford's agreement to take the test was voluntary – and, therefore, independent of the provisions of the Alabama implied consent statute.  Id. at 249-50.  The court held that, *if* Lunceford's consent to take the test was involuntary, then he was entitled to a new trial; otherwise, he remained convicted of driving under the influence of alcohol.  Id. at 250.

In State v. Wetherell, 514 P.2d 1069, 1073 (Wash. 1973), the Washington appellate court found that defendant Wright[14] had "actually consented" to a breath test, although he was not arrested.  The Washington implied consent statute, RCW § 46.20.380(1), was similar to the Virginia statute in that a person was "deemed to have given consent" to take the test if he drove on the public highways and if he was arrested for driving while intoxicated.  Id. at 1071-72.  The Washington court ruled that the provisions of the implied consent statute and its warnings were "superfluous" if the driver actually consented to take the test.  Id. at 1072.  As Wright had consented to take the test without recourse to the provisions of the implied consent statute, the court held that the results of his test were admissible.  Id. at 1073.  See also State v. Seager, 131 N.W.2d 676, 677-78 (Neb. 1964) ("There is nothing in the present statutory conditions relative to implied consent which has the effect of changing the foundation requirements of the statutes for

---

[13] Section 32-5-192(a) of the Alabama Code states, in part:

> Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor.

[14] Wright's and Wetherell's appeals were consolidated.

the admission of tests performed pursuant to the consent of the accused."); State v. Auger, 196 A.2d 562, 565-66 (Vt. 1963) ("[W]here, as here, the respondent consents to the testing of her blood without arrest, the statutory requirements speaking of 'arrest or otherwise taken into custody' lose their binding significance. A respondent cannot have it both ways by consenting to the taking of the blood test to avoid the license suspension provision of 23 V.S.A. § 1191, and yet have the admission of that very test barred because the State failed to carry out the arrest provisions which consent made superfluous. The statute is looking in the direction of a lack of actual consent, as is suggested by its reference to implied consent.").[15]

While the implied consent law provides an incentive for a driver to submit to a breath test, if an arresting officer does not discuss that law with a driver in order to obtain a breath sample, the provisions of Code § 18.2-268.2 are not implicated. As appellant here voluntarily provided the breath sample for the Intoxilyzer test without any recourse to the implied consent law, we find that Code § 18.2-268.2 did not apply.[16] We must conclude, therefore, that appellant's premise for his question presented incorrectly states the law. As a result, we cannot find that the trial court erred when it overruled appellant's objection to the introduction of the certificate.

### 4. Appellant's Additional Arguments

Appellant contends to this Court *en banc* that the fact that the breath test was voluntarily taken does not automatically render its results admissible at trial. We do not necessarily

---

[15] Appellant was unable to provide this Court with any citation to an out-of-state court that excluded a BAC certificate solely on the basis that the breath sample was voluntarily provided by a defendant rather than pursuant to the provisions of an implied consent law.

[16] The record in this case contains no evidence that the officer ever read the implied consent law to appellant or that appellant had any knowledge of the statute prior to his submission to the breath test.

disagree.[17]  However, the converse is not necessarily true either – the certificate is not necessarily excluded simply because the implied consent statute does not apply.  See Stroupe v. Commonwealth, 215 Va. 243, 207 S.E.2d 894 (1974) (discussing a previous enactment of the implied consent law, noting that the statute made admissibility of certificates *easier*, but not that BAC certificates were impossible to introduce prior to passage of such laws).  Appellant simply did not argue at trial, and does not argue on appeal, that Code § 18.2-268.9 or any other rule of evidence *precluded* introduction of the certificate of analysis here.[18]  As the issue was not argued at trial or in his question presented on appeal, consideration of Code § 18.2-268.9 is inappropriate under Rule 5A:18 and Rules 5A:12 and 5A:20.

Appellant argued only that Code § 18.2-268.2(A) *itself*, and particularly as interpreted in Durant and Thomas, precluded introduction of the certificate of analysis because the arrest was unlawful.[19]  Although appellant could have argued at trial that Code § 18.2-268.9 precluded introduction of the certificate here, he never made this argument to the trial court.  Therefore, we do not consider the application of Code § 18.2-268.9 here, especially as appellant also does not argue that the ends of justice require consideration of Code § 18.2-268.9 or the foundation

---

[17] We also do not necessarily agree that the certificate was inadmissible under Code § 18.2-268.9.  We simply find that this discussion is precluded by Rules 5A:18 and 5A:20, and by the framing of the question presented.

[18] Appellant argues to this Court that the Commonwealth had to prove the test equipment was reliable, the qualifications of the person conducting the test, and the chain of custody of the breath sample if the sample was not obtained pursuant to the implied consent statute.  He did not make this objection at trial, so the trial court never had an opportunity to consider whether the Commonwealth had established this foundation.  We do note that the record clearly indicates that Officer Weinstein was certified on the Intoxilyzer, that Officer Weinstein administered appellant's BAC test, and that the attestation on the certificate as well as the officer's testimony indicated the Intoxilyzer was working properly.  However, the trial court made no ruling on these facts as appellant never raised this issue at trial.

[19] Appellant's position seems to be that *no* BAC test results are admissible if the suspect's arrest was unlawful – whether or not an appropriate foundation is established at trial for the introduction of the results of the test.

requirements for the certificate. See Rule 5A:18; Singson v. Commonwealth, 46 Va. App. 724, 749 n.10, 621 S.E.2d 682, 694 n.10 (2005).

Appellant also claims that his objection at trial preserved his argument now made to this Court *en banc* that the certificate of analysis was not admissible under Code § 18.2-268.9. However, again, appellant *never* argued that the certificate was inadmissible under Code § 18.2-268.9, nor did he argue that the prosecutor failed to establish the appropriate foundation for admission of the document. Instead, he simply argued that the implied consent statute did not apply because the arrest was improper – an argument that said nothing about the foundation necessary to admit the certificate into evidence.

Appellant's counsel, who was also trial counsel, acknowledged at trial the Commonwealth's argument that appellant "voluntarily took the test, and therefore it was a voluntary action by the defendant, [and] therefore [the BAC certificate] should come in against him." Therefore, appellant's counsel acknowledged the Commonwealth's position that appellant expressly consented to taking the breath test, and his counsel recognized this express consent as a potential basis for admitting the certificate of analysis. Thus, it was incumbent upon appellant to object at trial if he did not believe the proper foundation under Code § 18.2-268.9 (or otherwise) was laid for the admission of the BAC certificate based upon appellant's voluntary, express consent to blow into the Intoxilyzer. However, appellant made no such objection to the proper foundation for the certificate's admission under appellant's express consent to take the breath test.

Consequently, the trial court was never asked to make a ruling on whether a proper foundation had been laid for admission of the results of the breath test, whether under some provision in the Code or under the common law of Virginia. If appellant had made such an objection, then the Commonwealth could have laid any additional foundation for the document

- 16 -

that was needed, especially as the officer who performed the test was already on the stand and testifying. Instead, as appellant explained at trial, his objection was based on the fact that the misdemeanor arrest occurred on private property, where the officer had not observed the commission of the misdemeanor, and, thus, the implied consent law did not apply to allow the officer *to administer* the test. Therefore, it is not surprising that the trial court based its explicit ruling only on the objection actually made by appellant.

Furthermore, the Commonwealth, as the proponent of the certificate of analysis, was required to respond only to appellant's arguments against the administration of the breath test. However, the Commonwealth was not required to address every possible objection to the certificate's admission, even arguments that were not presented by appellant. Thus, the Commonwealth was required only to answer the specific objections that appellant did make against the administering of the breath test. See Wright v. Norfolk & W. Ry. Co., 245 Va. 160, 170, 427 S.E.2d 724, 729 (1993) ("[A] litigant will not be permitted to invite a trial court to commit error, either through agreeing *or failing to object*, and then be permitted to successfully complain of such error on appeal." (emphasis added)); cf. Neal v. Commonwealth, 15 Va. App. 416, 422, 425 S.E.2d 521, 524-25 (1992) (explaining that the specifics of the objection are important to preserving an evidence issue for appeal).

Here, the trial court was never asked to consider the question from the perspective now presented by appellant on appeal *en banc* – that Code § 18.2-268.9, rather than Code § 18.2-268.2, excluded the certificate. In addition, appellant never made any objections based on Code § 18.2-268.9 requiring the Commonwealth to prove that the certificate of analysis met the requirements of that statute. Moreover, the wording of appellant's question presented in this Court continues to frame the issue here in the same way it was treated by the parties and the trial

court at the trial level.  For all of these reasons, the provisions of Code § 18.2-268.9 do not affect our analysis here.

The dissent, in discussing the provisions of Code § 18.2-268.9, suggests that this Court advances an argument that the Commonwealth did not make at trial.  However, in making this claim, the dissent mischaracterizes events at the trial level.  The effect of appellant's request for a breath test, without any mention of the implied consent statute by the officer, was before the trial court because the Commonwealth did present this evidence at trial and because appellant admitted in his argument to the trial court that his willingness to take the test was a part of the Commonwealth's argument on admissibility.  In fact, appellant responded to this argument at trial when he presented his position on this issue to the trial court during his initial argument on the admissibility of the certificate.  In contrast, although the dissent suggests otherwise, appellant apparently did not believe an argument objecting to a supposed lack of foundation for admission of the BAC certificate was even appropriate in this case as he never made an objection at trial to the adequacy of the foundation for admission of the certificate – even though he clearly argued that appellant's voluntary offer to take the breath test still did not allow for the BAC certificate's admissibility.  Indeed, if his question presented were based on the inadequacy of the foundation for admission of the certificate, this Court would have to find that appellant had not even preserved this argument pursuant to Rule 5A:18.  Appellant's objection was simply that the test was not administered pursuant to the implied consent statute because his arrest was not in compliance with the provisions of the Virginia Code.  In affirming the trial court's admitting the certificate of analysis, this Court simply addresses a legal argument that was raised at trial and was raised before this Court – one to which appellant responded twice at trial and one on which appellant conceded the fact that he explicitly volunteered to take the test without recourse to the

implied consent statute.[20]  As such, the Court is simply applying the appropriate law to the

circumstances of this case, based on arguments that were presented to the trial court.  See

Whitehead v. Commonwealth, 278 Va. 105, 115, 677 S.E.2d 265, 270 (2009) (noting that an

appellate court may consider a legal argument different from the primary one addressed by the

trial court if the different legal argument does not require additional factfinding); Schultz v.

Schultz, 51 Va. (10 Gratt.) 358, 384 (1853) (finding that "it is the settled rule that how erroneous

soever may be the reasons of the court for its judgment upon the face of the judgment itself, if

the judgment be right, it will not be disturbed on account of the reasons"); Perry v.

Commonwealth, 55 Va. App. 122, 128-30, 684 S.E.2d 227, 229-30 (2009) (noting that an

appellate court can consider legal arguments that were not specifically addressed by a trial

court).[21]

---

[20] As discussed in footnote 4, *supra*, we find that Whitehead is not applicable here as the issue of appellant voluntarily asking to take the breath test was indeed raised at trial.  The dissent disregards the fact that appellant expressly volunteered to provide a breath sample, even insisting on taking the test, before the officer had an opportunity even to suggest that appellant should provide a breath sample under the implied consent statute.  The dissent also overlooks the response of appellant's counsel to this fact while before the trial court, made during his argument that the sample was not obtained legitimately pursuant to the implied consent statute.  In addition, the dissent fails to acknowledge the fact that appellant's counsel responded not once, but twice, to the argument that appellant provided the sample independently of the implied consent statute.  Furthermore, the dissent disregards the fact that neither of appellant's two arguments related to any supposed lack of foundation for admission of the certificate.  Finally, the dissent disregards the fact that the trial court *never* rejected the argument that appellant explicitly consented to providing the sample without recourse to the implied consent statute.  Indeed, the dissent ignores the fact that appellant conceded – both by presenting no evidence to counter the officer's testimony and through his attorney's express concession – that he explicitly and voluntarily consented to take the breath test without any reliance on or reference to the implied consent statute.

[21] It is interesting to note that, although Whitehead was released prior to oral argument in this case, appellant never asked for leave to address this issue.  In fact, even at oral argument, appellant did not raise the issue of Whitehead nor did he request permission to brief this additional issue.  Indeed, at oral argument, even though virtually all of the questions dealing with Whitehead were addressed to appellee's counsel, appellant's counsel never mentioned Whitehead during any of his argument to this Court sitting *en banc* – during either the first part of his argument or in his rebuttal.

Appellant also argues that, if the certificate is not admitted pursuant to the implied consent statute, then the presumptions included in Code § 18.2-269 do not apply. He points out that he argued to the trial court that, if the implied consent law did not apply, then "you don't get the results in under [Code §] 18.2-269, and therefore it makes the certificate irrelevant." The trial court did not give this argument any credence, nor do we.

Code § 18.2-269 allows a trial court to apply a rebuttable presumption that an accused was under the influence when a breath sample is obtained "in accordance with the provisions of §§ 18.2-268.1 through 18.2-268.12" and when the breath test indicates that the accused had a BAC of .08 or more. Code § 18.2-269 also allows a presumption that the accused is not under the influence of intoxicants if the results indicate a BAC level of .05 or less. But Code § 18.2-269(A)(2) also acknowledges that, if a presumption does not apply, "such facts may be considered with other competent evidence in determining the guilt or innocence of the accused." Clearly, therefore, Code § 18.2-269 does not *exclude* a certificate of analysis simply because the rebuttable presumption does not apply at trial. The certificate here was not "irrelevant," even if the presumption in Code § 18.2-269 did not apply, because it still presented information relevant to the factual question of whether appellant was intoxicated while driving. See Clay v. Commonwealth, 262 Va. 253, 257, 546 S.E.2d 728, 730 (2001) ("Evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue."). The trial court did not err in determining that the certificate was relevant to this question, even if it did not give rise to a rebuttable presumption. See Swisher v. Commonwealth, 256 Va. 471, 487, 506 S.E.2d 763, 772 (1998) ("The decision to refuse or admit evidence based on relevance rests within the discretion of the trial court . . . .").

## III. CONCLUSION

We find the officer did not need to resort to the implied consent law to obtain a breath sample because appellant explicitly asked to take the breath test without being informed about the implied consent statute.  Thus, as the officer did not rely upon Code § 18.2-268.2(A) to obtain the sample, that statute was irrelevant here and did not require the exclusion of the certificate of analysis.

We find the trial court did not err in admitting the certificate into evidence, and, therefore, we affirm appellant's conviction.

<u>Affirmed.</u>

Humphreys, J., with whom Felton, C.J., Elder, Frank and Petty, JJ., join, dissenting.

Because the analysis and holding of the majority rests entirely upon the sort of appellate fact-finding by this Court that our Supreme Court sought to restrain in Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009), modified, Rec. No. 080775 (Oct. 22, 2009), and because I disagree with the merits of the majority's analysis and its conclusion that by voluntarily taking the breath test, appellant somehow conceded the admissibility of the test results in court, I dissent from the holding and judgment in this case. Furthermore, I believe such a holding is contrary to both the basic rules of evidence and existing case law. I would hold that the trial court erred in admitting the certificate containing the results of appellant's breath test pursuant to the implied consent statute, and I would, thus, reverse the conviction and remand for a new trial if the Commonwealth is so advised.

## I. Applicability of Whitehead v. Commonwealth

When this case was originally appealed to this Court, the Attorney General filed a brief that took the identical legal position as that taken by the prosecutor in the trial court – that the certificate was admissible because the implied consent statute both applied and its requirements were satisfied. The entire focus of both parties before the three-judge panel of this Court was whether the implied consent statute applied to an arrest following an accident, which may or may not have occurred "upon a highway of the Commonwealth." There was no assertion by the Attorney General that any other rationale existed for admitting the certificate in this case.[22] Nor did the prosecutor make any such assertion at trial. Indeed, the rationale advanced and relied upon by the majority was first raised in the panel majority's opinion and only adopted later, and for the first time, by the Attorney General when this case was re-argued *en banc*. It seems to me

---

[22] In fact, the Attorney General waived oral argument before the panel.

that the majority's analysis represents an exact repetition of the sort of *de novo* appellate fact-finding that our Supreme Court sought to check in Whitehead.

In Whitehead, this Court, sitting *en banc*, affirmed Whitehead's conviction on the theory that she "aid[ed] in the concealment of the stolen property."  278 Va. at 114, 677 S.E.2d at 270. However, this legal theory was never argued by the Commonwealth, either in the trial court or before this Court on appeal.  As our Supreme Court noted, "[t]he first appearance of the concealment theory in the record is in the opinion of the Court of Appeals."  Id.  Similarly, in this case, the first appearance of the alternative basis for admitting the certificate was in the panel majority's opinion, and was neither raised in the trial court nor argued before the three-judge panel.  Only when we granted *en banc* review did the Office of the Attorney General, apparently having determined that the panel majority had advanced a better theory for the admissibility of the certificate than it had, abandon its earlier appellate position and adopt the analysis and arguments of the panel majority.  The Attorney General's *nouveau* position is not necessarily too little, but in my view, it comes too late.

While appellate courts may affirm the ruling of a trial court when it has reached the right result for the wrong reason, this rule does not always apply.  In Whitehead, our Supreme Court expressly adopted the holdings of this Court in Harris v. Commonwealth, 39 Va. App. 670, 675-76, 576 S.E.2d 228, 231 (2003 ) ("[T]he proper application of this rule does not include those cases where, because the trial court has rejected the right reason or *confined its decision to a specific ground*, *further factual resolution is needed before the right reason may be assigned to support the trial court's decision*." (emphasis added)), and in Blackman v. Commonwealth, 45 Va. App. 633, 642-43, 613 S.E.2d 460, 465 (2005) ("[A]n appellee may argue for the first time on appeal any legal ground in support of a judgment *so long as it does not require new factual determinations*." (emphasis added)).

In this case, the trial court clearly confined its ruling to a specific ground – that the implied consent statute applied to the breath test in this case – and, as in Whitehead, additional fact-finding regarding the foundation for the majority's alternate theory of admissibility would clearly be necessary. The concealment theory at issue in Whitehead was "an alternative means of establishing guilt" under the Code. 278 Va. at 114, 677 S.E.2d at 270. As such, it required proof of different elements than those advanced at trial. Similarly, and as discussed more fully below, the alternative basis for the certificate's admission advocated by the majority involves different foundational requirements that in turn necessitates additional fact-finding.

Moreover, a "right result, wrong reason" analysis is inappropriate here for two other reasons. First, the "right reason" was never before the trial court, either explicitly or implicitly. Although the majority points to the testimony of Officer Weinstein that Roseborough took the breath test voluntarily, Weinstein was a witness, not the attorney for the Commonwealth. Thus, while the *fact* that Roseborough took the test voluntarily was arguably before the trial court, the *issue* that the test was admissible on that basis was not since the prosecutor never asked the trial court to consider that alternate basis for admissibility. Second, in finding that the foundation was sufficient for admitting the certificate of analysis under its alternative means of establishing admissibility, the majority also steps into the role of a trial court and engages in precisely the kind of appellate fact-finding Whitehead prohibits.

For these reasons, I would decide the merits of the issue presented in this appeal solely upon the basis raised by the parties in the trial court and originally presented to this Court on appeal.

## II. Admissibility of the Certificate of Analysis

The majority finds that "[a]s appellant *volunteered* to provide the breath sample, without being influenced by the provisions of the implied consent law, those provisions are irrelevant

- 24 -

here." See supra at 10. This statement by the majority combines and confuses two otherwise distinct legal issues: the voluntariness of appellant's breath test when arrested and the admissibility of the certificate of analysis from appellant's breath test as an exhibit at trial. As already noted above, notwithstanding the testimony of Officer Weinstein, it is clear from the record that the Commonwealth laid the foundation and sought the admission of the certificate based *solely* upon the applicability of the implied consent statute. Furthermore, the record unequivocally demonstrates that the trial court admitted the certificate on that basis and no other. Yet, the majority simply ignores what was actually argued to the trial court as well as the rationale stated by the trial court for its ruling, and finds another rationale for the certificate's admissibility. The majority then substitutes that rationale for the one that was actually advanced in and accepted by the trial court. The majority begins with the notion that because appellant agreed to submit to the breath test, the provisions of the implied consent statute are inapplicable. The majority then ultimately concludes that because the taking of the breath test was voluntary, the results were *ipso facto* admissible at trial in the absence of an objection more specific than the one made here.

In response, I must initially point out that every submission to a breath test is essentially a voluntary act, whether conducted pursuant to Code § 18.2-268.2(A) or not. Our statutory scheme contemplates that by driving on the highways of the Commonwealth, one has consented to taking a breath or blood test. See Code § 18.2-268.2. This consent can only be withdrawn by an affirmative act revoking that consent. The only legal distinction between breath tests conducted pursuant to Code § 18.2-268.2 and those that are not is the *foundation that is necessary* in order to admit the test results as an exhibit at trial. It is axiomatic that criminal defendants do not make binding decisions regarding the admissibility of evidence at the time of their arrest by virtue of their cooperation with law enforcement officers. Judges make these decisions, and they do so

- 25 -

pursuant to the rules of evidence at the time the evidence is tendered to the fact finder. Thus, the mere fact that a breath test is voluntarily taken does not automatically render the results of that test admissible at trial, nor does it supply the necessary foundation for admissibility.[23]

The majority is content to look at Code § 18.2-268.2 in a vacuum stating that "[t]his statute does not address *all* instances when a breath test may be taken and includes no language addressing the *admissibility* of the resulting certificates of analysis at trial." See supra at 8. While this may be true in a literal sense, the majority has overlooked one of the most basic principles of appellate review. "[W]hen a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each." Ainslie v. Inman, 265 Va. 347, 353, 577 S.E.2d 246, 249 (2003) (citing Kole v. City of Chesapeake, 247 Va. 51, 56, 439 S.E.2d 405, 408 (1994)). Therefore, we cannot merely examine Code § 18.2-268.2 in isolation, but must consider it in relation to other sections of the Code that concern the admissibility of such evidence.[24]

Barring a stipulation by the parties, before a certificate of analysis from a breath test may be admitted into evidence, the Commonwealth must first lay an adequate foundation for its admissibility. The majority correctly notes that compliance with the implied consent statute is not necessarily a prerequisite for the admission of the results of a breath test. However, the majority ignores the fact that the foundation required for admission in other circumstances is far more stringent than that laid by the Commonwealth in this case.

---

[23] For example, the results of a preliminary breath test, which are always taken voluntarily, are never admissible at trial as evidence of guilt. Code § 18.2-267(E); see also Stacy v. Commonwealth, 22 Va. App. 417, 470 S.E.2d 584 (1996).

[24] The General Assembly has expressly noted that it considers Code §§ 18.2-268.2 through 18.2-268.9 as a series of related "steps." See Code § 18.2-268.11 ("The *steps* set forth in §§ 18.2-268.2 through 18.2-268.9 relating to taking, handling, identifying, and disposing of blood or breath samples are procedural and not substantive. Substantial compliance shall be sufficient." (emphasis added)).

Code § 18.2-268.9 outlines two categories of foundational requirements for the use of breath-test results as evidence in a prosecution for driving under the influence of alcohol or drugs.[25] For *all* cases involving a prosecution for driving under the influence, the statute provides, in pertinent part:

> To be *capable of being considered valid as evidence* in a prosecution under §§ 18.2-266 . . . chemical analysis of a person's breath shall be performed by an individual possessing a valid license to conduct such tests, with a type of equipment and in accordance with methods approved by the Department of Criminal Justice Services, Division of Forensic Science. The Division shall test the accuracy of the breath-testing equipment at least once every six months.
>
> The Division shall establish a training program for all individuals who are to administer the breath tests. Upon a person's successful completion of the training program, the Division may license him to conduct breath-test analyses. Such license shall identify the specific types of breath test equipment upon which the individual has successfully completed training . . . .

Code § 18.2-268.9 (emphasis added).

Thus, *no* breath test evidence may be *considered* for admission unless the test was conducted by a properly licensed operator on properly approved equipment. The remaining language in Code § 18.2-268.9 states the foundational requirements for the *admissibility* of certificates reporting the analyses of breath tests, but expressly limits those requirements to breath tests administered pursuant to Code § 18.2-268.2 as follows:

> Any individual conducting a breath test *under the provisions of § 18.2-268.2* shall issue a certificate which will indicate that the test was conducted in accordance with the Division's specifications, the equipment on which the breath test was conducted has been tested within the past six months and has been found to be accurate, the name of the accused, that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test, the date and time the

---

[25] While Code § 19.2-187 deals with the general admissibility of certificates of analyses, Code § 18.2-268.9 specifically addresses the use of breath-test results as evidence.

- 27 -

> sample was taken from the accused, the sample's alcohol content, and the name of the person who examined the sample. *This certificate, when attested by the individual conducting the breath test, shall be admissible in any court in any criminal or civil proceeding as evidence of the facts therein stated and of the results of such analysis . . . .*

Code § 18.2-268.9 (emphasis added).

Basically, in order to introduce the results of a breath test in *any* prosecution under Code § 18.2-266, the operator and equipment *must* comply with the first paragraph of Code § 18.2-268.9 as part of the foundation for admissibility of the test results. However, if the implied consent statute is applicable, the only remaining foundational requirements are found in Code § 18.2-268.9 itself, and the certificate of analysis is admissible if the requirements of both the first and second paragraphs of that statute have been satisfied. In essence, the properly attested certificate by a certified operator using approved equipment, when coupled with the applicability of the implied consent statute, provides the necessary foundation. On the other hand, if the implied consent statute does not apply, as the majority suggests was the case here, then the streamlined statutory foundational requirements for admitting the certificate of analysis contained in the second paragraph of Code § 18.2-268.9 are likewise inapplicable. Under those circumstances, the test results would only be admissible following the laying of a proper foundation consistent with both the first paragraph of Code § 18.2-268.9 *and* the additional requirements imposed by the traditional rules of evidence such as those prohibiting hearsay or governing expert witnesses. See Charles E. Friend, The Law of Evidence in Virginia § 14-5(a), at 573 (6th ed. 2003). Since the Commonwealth offered no evidentiary foundation, other than the assertion that the implied consent statute was applicable and the fact that the officer was a "certified Intox operator," the trial court would have erred in admitting the test results even under the analysis of the majority.

However, the majority circumvents that result by reasoning from the negative and asserts that the trial court did not err in admitting the certificate because:

> [a]ppellant argued only that Code § 18.2-268.2(A) *itself*, and particularly as interpreted in Durant and Thomas, precluded introduction of the certificate of analysis because the arrest was unlawful. Although appellant could have argued at trial that Code § 18.2-268.9 precluded introduction of the certificate here, he never made this argument to the trial court . . . [and] does not argue that the ends of justice require consideration of Code § 18.2-268.9 or the foundation requirements for the certificate.

See supra at 15-16 (emphasis in original).

However, in making this assertion, the majority disregards a number of significant facts in the record. First, the Commonwealth offered no alternative basis for the admission of the certificate of analysis other than the applicability of Code § 18.2-268.2(A) "*itself*." In fact, the sole foundation laid by the Commonwealth for the admissibility of the certificate was that (1) Officer Weinstein was a certified breathalyzer operator, (2) he advised appellant of the statutory presumption of sobriety found in Code § 18.2-269(A)(1), and (3) he substantially followed all of the procedures required for taking and admitting the results of a breath test pursuant to Code § 18.2-268.2 *et seq*. (the implied consent statutes). Thus, it seems obvious from the record that, in context, the exhibit was clearly tendered for admission by the Commonwealth on the basis of compliance with Code § 18.2-268.2.

Second, appellant objected to the admission of the certificate of analysis pursuant to the implied consent statute, arguing that the Commonwealth failed to establish that he had been validly arrested – a prerequisite for the admissibility of test results obtained pursuant to Code § 18.2-268.2(A). See Bristol v. Commonwealth, 272 Va. 568, 636 S.E.2d 460 (2006). The Commonwealth never responded to this argument by asserting the inapplicability of Code § 18.2-268.2(A), as the majority now does on appeal. Instead, the Commonwealth argued that the implied consent statute did in fact apply and was satisfied, advancing no other argument

- 29 -

in support of its position. After hearing lengthy arguments from both the prosecutor and defense counsel that focused exclusively on whether the arrest requirement of the implied consent statute was satisfied, the trial court stated, "I'm going to overrule the objection, [and] admit the Certificate of Analysis." Furthermore, the trial court expressly stated that, in doing so, it relied on Easton v. Commonwealth, No. 2119-04-2 (Va. Ct. App. Jun. 28, 2005),[26] an unpublished opinion of this Court, in making its ruling.

In Easton, the appellant challenged the admissibility of her certificate of analysis on the grounds that the requirements of the implied consent statute were not satisfied. This Court disagreed and affirmed her conviction because the certificate was admissible *under the implied consent statute*. In admitting the certificate of analysis, the trial court expressly noted that Easton was "almost identical" to the issue before it and then stated "Mr. Whitestone [counsel for appellant], you have a court reporter here. You can give the Court of Appeals another opportunity to revisit [sic], but *in my estimation, they have already decided*." (Emphasis added). This statement by the trial court undoubtedly confirms that it admitted the certificate pursuant to the implied consent statute.

The majority excuses any error by the trial court by asserting that appellant did not object specifically on the ground that Code § 18.2-268.9 or any other rule of evidence precluded introduction of the certificate of analysis. Assuming, without agreeing, that appellant's objection lacked the requisite specificity to put in issue the rationale offered by the majority, the obvious point that must be made is that *appellant did not have to object on other grounds if the ground upon which he did object, had merit*.

---

[26] In Easton, unlike the appellant here, Easton conceded to the trial court that she was validly arrested.

Here, the Commonwealth offered the certificate of analysis into evidence and, in doing so, both proffered a foundation procedurally consistent with the requirements of a breath test taken pursuant to Code § 18.2-268.2 and specifically argued that the test was administered in compliance with the implied consent statute. Appellant then objected to the admission of the certificate based upon his perceived defect in the foundation for admissibility advanced by the Commonwealth. The trial court, after hearing arguments from both counsel which focused exclusively on whether or not the foundational requirements for the admissibility of the certificate of analysis had been met *pursuant to the implied consent statute*, and considering an unpublished decision from this Court which dealt with the very point in issue, admitted the evidence over appellant's objection. In other words, the context of the decision by the trial court to admit the certificate of analysis as an exhibit was framed by (1) the foundation tendered by the Commonwealth, (2) the objection made by appellant to the sufficiency of that foundation, and (3) the arguments of counsel and the consideration of precedent which dealt with the arguments advanced. The rules of court surely require no more of an advocate in order to preserve the point for appeal than was done here. In my view, by requiring that counsel must respond to arguments, or grounds for admission of an exhibit, never advanced by the proponent of the exhibit, the majority has improperly advanced, *sua sponte*, an argument on behalf of the Commonwealth that was never made by the Commonwealth before this case reached this Court *en banc*. For these reasons, I disagree with the majority and would reach the merits of the issue of the admissibility of the certificate of analysis on the basis argued and decided in the court below.

In that vein, Virginia's implied consent statute, Code § 18.2-268.2(A), provides:

> Any person, whether licensed by Virginia or not, who operates a
> motor vehicle upon a highway, as defined in § 46.2-100, in the
> Commonwealth shall be deemed thereby, as a condition of such
> operation, to have consented to have samples of his blood, breath,

- 31 -

> or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2-266, 18.2-266.1, or subsection B of § 18.2-272 or of a similar ordinance within three hours of the alleged offense.

Thus, the results of a breath test administered pursuant to Code § 18.2-268.2(A) are admissible against the accused in a trial for driving under the influence, so long as the accused has first been *validly arrested*. Durant v. City of Suffolk, 4 Va. App. 445, 448, 358 S.E.2d 732, 734 (1987). Appellant argues on appeal, as he did to the trial court, that the statutory requirements for a valid, warrantless arrest were not satisfied in this instance.

Code § 19.2-81 delineates the circumstances under which an officer may arrest a person without a warrant. For misdemeanors, the general rule is that an officer may not make a warrantless arrest of a person, unless the crime was committed in the officer's presence. Galliher v. Commonwealth, 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933). "An offense is committed within the presence of an officer, within the meaning of this rule, when he has direct personal knowledge, through his sight, hearing, or other senses that it is then and there being committed." Id.

The offense for which appellant was arrested is a misdemeanor, and was not committed "within the presence" of the officer. The officer arrived at the scene approximately thirty minutes after the single vehicle accident within the private, gated community. He did not observe appellant drive or operate the vehicle in any way. The officer had no "direct personal knowledge" that an offense was "*then and there* being committed." Id. (emphasis added). Therefore, appellant's arrest was invalid unless an exception to the presence requirement of Code § 19.2-81 applied.

"[T]he legislature set forth certain exceptions to the misdemeanor presence rule in Code § 19.2-81, indicating that a deviation from the presence requirement is authorized only in these

limited circumstances." Penn v. Commonwealth, 13 Va. App. 399, 404, 412 S.E.2d 189, 192 (1991), aff'd, 244 Va. 218, 420 S.E.2d 713 (1992). The exception to the presence requirement of Code § 19.2-81 that concerns the issue before us involves motor vehicle accidents occurring on "any of the *highways . . . of the Commonwealth*." (Emphasis added). Pursuant to the statute, "such officer may, within three hours of the occurrence of any *such accident* involving a motor vehicle, arrest without a warrant at any location any person whom the officer has probable cause to suspect of driving or operating such motor vehicle while intoxicated in violation of § 18.2-266 . . . ." Code § 19.2-81 (emphasis added). Appellant argues that this exception does not apply because the gated roadways of the Watergate at Landmark apartment complex do not constitute a "highway of the Commonwealth" for purposes of Code § 19.2-81. I agree.[27]

This Court has not previously had occasion to construe the phrase "highways of the Commonwealth" in the context of Code § 19.2-81. "Statutory interpretation presents a pure question of law and is accordingly subject to *de novo* review . . . ." Washington v. Commonwealth, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006) (citing Ainslie, 265 Va. at 352, 577 S.E.2d at 248). "[W]e [the Court] must determine the General Assembly's intent from the words contained in a statute." Id. (citing Commonwealth v. Diaz, 266 Va. 260, 264-65, 585 S.E.2d 552, 554 (2003)). "[W]hen a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each." Ainslie, 265 Va. at 353, 577 S.E.2d at 249 (citing Kole, 247 Va. at 56, 439 S.E.2d at 408).

---

[27] The Commonwealth argues that the language "at any location" in Code § 19.2-81 applies to the location of the accident. That, however, is a misreading of the statute. The words, "at any location" apply only to where the arrest may occur, not the location of the accident. As appellant correctly notes, the words "such accident" refer the reader to prior language in the statute, which indicate that the "accident" exception to the presence requirement is limited to those that occur "on any of the highways . . . of the Commonwealth." Code § 19.2-81.

Code § 19.2-81 provides no express definition of the word "highway." Consequently, we must look to the plain, commonly understood meaning of the word in order to ascertain the intent of the legislature. See Hulcher v. Commonwealth, 39 Va. App. 601, 605, 575 S.E.2d 579, 581 (2003). Traditionally, a "highway" is considered to be "a road or way on land . . . that is open to public use as a matter of right whether or not a thoroughfare." Webster's Third New International Dictionary 1069 (1961).

Appellant argues that the definition of "highway" contained in Code § 46.2-100 should be applied to the warrantless arrest requirements of Code § 19.2-81. However, the introductory paragraph of Code § 46.2-100 limits the application of that definition stating: "The following words and phrases when used in this title, *for the purpose of this title*, have the meanings respectively ascribed to them in this section . . . ." (Emphasis added). Put simply, the definition of highway used in Code § 46.2-100 is not, by itself, controlling on the issue of whether or not an officer can make a warrantless arrest of a person pursuant to Code § 19.2-81. Nevertheless, this definition, though not controlling, is helpful to our analysis as it is illustrative of how "highway" has been interpreted by the courts in other circumstances.

The Supreme Court of Virginia has consistently held that a highway is not limited to public roads. See Furman v. Call, 234 Va. 437, 439-40, 362 S.E.2d 709, 711 (1987) (holding that where the evidence was undisputed that the roads around and in a condominium complex were open to the public twenty-four hours a day, seven days a week and the public had never been denied access by guards or gates, the area was a "highway"); see also Mitchell v. Commonwealth, 26 Va. App. 27, 30, 492 S.E.2d 839, 840 (1997). "[T]he test for determining whether a way is a 'highway' depends upon the degree to which the way is open to public use for vehicular traffic." Kay Mgmt. Co. v. Creason, 220 Va. 820, 831-32, 263 S.E.2d 394, 401 (1980). "The public's free and unrestricted use of a roadway supports the inference that a road is a

- 34 -

highway. Evidence that the roadway's users must obtain either explicit or implicit permission to use the road may refute this inference." Campbell v. Commonwealth, 39 Va. App. 180, 190, 571 S.E.2d 906, 912 (2002) (citing Kay Mgmt. Co., 220 Va. at 832, 263 S.E.2d at 402). It follows that if a roadway were sufficiently restricted so as to prevent its free use by the public for vehicular traffic, the roadway would not constitute a highway for purposes of Code § 46.2-100. See Caplan v. Bogard, 264 Va. 219, 563 S.E.2d 719 (2002) (holding that the private parking lot of a restaurant, including its entrance, was not a "highway" pursuant to Code § 46.2-100); see also Roberts v. Commonwealth, 28 Va. App. 401, 504 S.E.2d 890 (1998) (holding that a convenience store parking lot, which was privately owned and which was only accessible to the public in connection with the owner's business invitation, was not a "highway" under Code § 46.2-100).

In drafting Code § 19.2-81, the General Assembly was explicit about the type of road to which it was referring with respect to the "accident" exception to the misdemeanor presence requirement. While the definition in Code § 46.2-100 applies only to "highways," Code § 19.2-81 uses the language "highways . . . of the Commonwealth." By adding the qualifying language, "of the Commonwealth," the General Assembly clearly intended to precisely limit the instances to which this exception applies. Thus, if a road does not qualify as a highway under Code § 46.2-100, it certainly would not qualify as a highway "of the Commonwealth" under Code § 19.2-81.

Clearly, the use of the roadways within the Watergate at Landmark was restricted in such a way as to exclude the general public. The evidence at trial established that the accident in question occurred exclusively within the confines of the apartment complex. Its roadways were not "open to public use for vehicular travel," Kay Mgmt. Co., 220 Va. at 831-32, 263 S.E.2d at 401, nor could they be considered a "road or way on land . . . that is open to public use as a

matter of right," Webster's supra, at 1069. A security gate controlled access to each of the five entrances to the apartment complex. To gain entry, a person would have to obtain explicit permission from a security guard or use a remote transponder. Additionally, a security guard from the apartment complex testified that the area in question was not open to the public. Because of their restricted nature, the roadways of the Watermark at Landmark do not qualify as a highway under Code § 46.2-100, and, thus, cannot be "highways of the Commonwealth" for the purposes of Code § 19.2-81.

Because the accident did not occur on a "highway of the Commonwealth," the statutory exception to Code § 19.2-81 did not apply, making appellant's warrantless arrest for driving while intoxicated invalid, as it did not occur in the presence of the arresting officer.[28] Therefore, the certificate of analysis of appellant's breath test was not administered pursuant to Virginia's implied consent statute, and the trial court erred in admitting it into evidence on that basis.

For the foregoing reasons, I would reverse appellant's conviction and remand for a new trial should the Commonwealth be so advised.

---

[28] The Commonwealth does not claim that any of the other statutory exceptions to the presence requirement apply.